IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | |
| WILLIAM L. MAYLAND and ) | |
| DARLENE S. MAYLAND, ) | Case No. 06-10283 |
| ) | |
| Debtors. ) | |
| _____) | |

## **MEMORANDUM OPINION**

This matter came before the Court for hearing on April 27, 2006 upon the Motion by Debtors to Redeem a 2004 Pontiac Aztec (the "Motion to Redeem"), filed on March 22, 2006, and an Objection by GMAC Financial Services (the "Creditor"), filed on March 31, 2006. At the hearing, Stephen D. Ling represented the above-referenced debtors (the "Debtors") and Pamela P. Keenan represented the Creditor.

The Debtors have moved for authority to redeem their 2004 Aztec (the "Vehicle") for $12,125. The dispute centers on the proper standard for valuation of a vehicle in a Chapter 7 bankruptcy. The Debtors argue that the proper valuation standard is the replacement value of the Vehicle, which they compute by taking ninety percent (90%) of the retail value for the vehicle listed by the N.A.D.A. Official Used Car Guide (the "NADA Guide"), which is published periodically by the National Automobile Dealers Association ("NADA"). The debtors contend that this results in a value of $12,125.00. The Creditor argues that the replacement value of the Vehicle should be its full retail NADA value, which is $13,900.00.

Based upon a review of the Motion to Redeem, the Objection thereto, the arguments presented at the hearing, and a review of the entire official file, the Court hereby makes the following findings of fact and conclusions of law.

I.  FACTS

The Debtors purchased the Vehicle on August 25, 2004.  The amount financed by the Debtors was $24,129.90.  The Debtors filed a Chapter 7 bankruptcy proceeding on March 17, 2006.  The amount owing to the Creditor on the petition date was $20,398.  The case was converted from Chapter 7 to Chapter 13 on October 5, 2005.  The Motion to Redeem was filed on March 22, 2006.  The Motion to Redeem valued the Vehicle at $12,125.

II.  ANALYSIS

The Court is called upon to determine the proper valuation standard of a vehicle under Section 506(a)(2) of the Bankruptcy Abuse Prevention Consumer Protection Act of 2005 ("BAPCPA"), which became effective in cases filed after on October 17, 2005.

A.  Rash and Its Progeny

The Supreme Court set the standard for valuing property retained by debtors in Associates Commercial Corp. v. Rash, 520 U.S. 953, 963 (1997).  Stating that Section 506(a) of the Bankruptcy Code contained no valuation standard, Rash determined that, under Section 506(a), the value of property retained when the debtor decides to "cram-down" a creditor's claim in a Chapter 13 case is the "cost the debtor would incur to obtain a like asset for the same proposed use."  Id.  In other words, Rash requires a debtor to value the creditor's collateral in a Chapter 13 at replacement value.[1]

---

[1] Rash stated that a replacement value standard distinguishes retention from surrender and renders meaningful the key statutory words "disposition or use." Id. at 954. "A replacement value standard accurately reflects the loss of value of the collateral from deterioration by extended use and more accurately gauges the debtor's proposed use of the property." Id. at 962-63. "The replacement value is not what it would cost for the debtor to purchase the product brand new, but it is the price a willing buyer in the debtor's trade, business or situation would pay a willing seller to obtain property of like age or condition." Id. at 959 n.2. "Bankruptcy courts, as

2

After Rash, courts uniformly used a replacement value for determining the amount of claims secured by property in a Chapter 13 bankruptcy. See, e.g., In re Caple, Case No. 05-50213, slip op. at 8 (Bankr. M.D.N.C. April 4, 2005)(Carruthers, J.)(2005 WL 1287991); In re Jones, Case No. 03-51675, slip op. at 1 (Bankr. M.D.N.C. October 14, 2003)(Carruthers, J.) (2003 WL 22399716).  This Court, following the replacement value standard established by Rash, determined that in Chapter 13 cases the beginning point for the "replacement value" of a vehicle is ninety percent (90%) of the retail value for the vehicle listed by the NADA Guide. See In re Rives, Case No. 05-50750, slip op. at 3 (Bankr. M.D.N.C. May 4, 2006)(2006 WL 1314334).  The values listed by the NADA Guide assume that the vehicle has been cleaned, repaired, reconditioned, and otherwise prepared for sale as an automobile dealer would normally do.[2]  Deducting ten percent (10%) from the NADA retail value, as a starting point in the valuation process, accounts for the fact that automobiles are rarely, if ever, maintained in peak condition by debtors in bankruptcy.  Moreover, if there are particular characteristics of the vehicle in question that would affect its value, such as high mileage or special features, then evidence of the same may be introduced and may affect the value ultimately determined by the

---

the trier of fact, must determine whether the replacement value was the equivalent of retail, wholesale, or some other value based on the type of debtor and the nature of the property. Adjustments might be necessary, where appropriate, to account for the absence of warranties, inventory, storage, and reconditioning charges." Id. at 965 n.6.

[2]"The values contained within the Official Used Car Guide are meant to reflect a vehicle that is in clean condition, with mileage falling within the shaded N.A.D.A. Mileage Range (see Mileage Table).  Because individual vehicle condition varies greatly, users of the N.A.D.A. Guide and its derivative products may have to made independent adjustments for a variety of factors that are not specifically accounted for by N.A.D.A., such as body damage, mechanical defects, worn tires or aftermarket improvements or alterations.  Appropriate deductions should be made for any reconditioning costs incurred to put a vehicle into saleable condition." NADA Guide, p. III.

Court.

In the context of a Chapter 7 bankruptcy, a majority of courts have distinguished Rash and reached a different result.  See, e.g., Triad Financial Corporation v. Weatherington (In re Weatherington), 254 B.R. 895, 899-901 (B.A.P. 6th Cir. 2000).  Such courts recognized that "the use and disposition of collateral in the Chapter 7 redemption context is quite different from the Chapter 13 cramdown context."  Id. at 899 & cases cited therein.   Rather than a replacement value, these cases conclude that a liquidation value should be used.  This liquidation value is the "amount that the creditor would receive if the creditor repossessed and sold the collateral in the manner most beneficial to the creditor."  Id.  Courts in the Middle District of North Carolina were part of this majority.  E.g., In re Murray, Case No. 00-10603, slip op. at 5 (Bankr. M.D.N.C. June 23, 2000)(Stocks, C.J.)(in a Chapter 7, "the appropriate standard is one in which the value is what the secured creditor would receive if it repossessed the collateral and sold it in a commercially reasonable manner"); In re Funk, Case No. 02-51304, slip op. at 2 (Bankr. M.D.N.C. September 5, 2002)(Carruthers, J.)("replacement value is not appropriate" for redemption purposes in a Chapter 7).

### B.  Section 506(a)(2)

This case was filed on March 17, 2006, and is thus controlled by BAPCPA.  While the prior version of Section 506(a) did not contain a valuation standard, new Section 506(a) does.  Section 506(a)(2) requires the valuation of personal property to be determined based on the replacement value of the property on the petition date.  Section 506(a)(2) reads as follows:

> If the debtor is an individual in a case under chapter 7 or 13, such value with respect to personal property securing an allowed claim shall be determined based on the replacement value of such property as of the date of the filing of the petition without deduction for costs of sale or marketing.  With respect to

4

> property acquired for personal, family, or household purposes, replacement value
> shall mean the price a retail merchant would charge for property of that kind
> considering the age and condition of the property at the time value is determined.

In an apparent effort to codify the Rash decision, Congress stated that, in individual cases, the amount of allowed claims secured by personal property shall be determined by using a "replacement value." Moreover, if the personal property was acquired by the debtor for "personal, family, or household purposes," then "replacement value" is defined to be the price that a retail merchant would charge for similar property.[3] The NADA Guide is meant to provide information about the amount for which a retail automobile dealer would sell a given vehicle. Using ninety percent (90%) of the NADA retail value of a vehicle as a starting point for valuing the vehicle is therefore consistent with new Section 506(a)(2), consistent with prior practice in this District, and consistent with the assumptions inherent in the NADA Guide.

New Section 506(a)(2) makes clear that it is applicable in both Chapter 7 cases and Chapter 13 cases. Thus, it effectively overrules those cases that found that a liquidation standard was the proper valuation standard for redemption purposes in a Chapter 7 case. Replacement value is now the standard for valuing claims for redemption purposes in Chapter 7 cases as well as Chapter 13 cases.

## C.  The Present Case

Since the Debtor is an individual in a Chapter 7 case, and since the Vehicle was purchased for the Debtor's personal use, the value of the Vehicle is ninety percent (90%) of its

---

[3]The legislative history of Section 506(a)(2) does not attempt to clarify the definition of replacement value if the property was not acquired for personal, family, or household purposes. Nor does it give any further insight into the means by which the court should determine the replacement value. For a complete legislative history, see House Report No. 109-31, Pt. 1, 109th Cong., 1st Sess. 83 (2005).

NADA retail value as of the petition date. The parties do not dispute that the NADA retail value of the Vehicle as of March 17, 2006 was $13,700.00. The redemption value of the Vehicle is $12,510.00, calculated as follows:

```
  $13,700.00  base NADA retail
 +$     350.00 aluminum alloy wheels
  $14,050.00
 - $    150.00 high mileage adjustment[4]
  $13,900.00    total
  x       0.90
  $12,510.00
```

### III. CONCLUSION

For purposes of the Motion to Redeem, the value of the Vehicle is $12,510.00.

This memorandum opinion constitutes the Courts' findings of fact and conclusions of law. A separate order will be entered pursuant to Fed. R. Bankr. P. 9021.

---

[4]Schedule B stated that the Vehicle had 36,000 miles on the date of the petition.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | |
| WILLIAM L. MAYLAND and ) | |
| DARLENE S. MAYLAND, ) | Case No. 06-10283 |
| ) | |
| Debtors. ) | |
| ) | |

## PARTIES IN INTEREST

William L. Mayland

Darlene S. Mayland

Stephen D. Ling, Esquire

Pamela P. Keenan, Esquire

Anita Jo Kinlaw Troxler, Esquire

Michael D. West, Esquire